UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:22cv557 (RDA/WEF) |
| J&J ADVANCED THERMAL SOLUTIONS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff's Motion for Default Judgment (Dkt. 8).[1]
For the reasons stated below, the undersigned United States Magistrate Judge recommends that
the Court GRANT Plaintiff's Motion.

I. Background

**A.      Procedural Posture**

Plaintiff Board of Trustees for the Sheet Metal Workers' National Pension Fund
("Plaintiff" or "the Fund"), filed this lawsuit on May 16, 2022, against Defendant J&J Advanced
Thermal Solutions, Inc. ("J&J ATS"),[2] pursuant to sections 502(g)(2) and 515 of the Employee

---

[1] The relevant filings before the Court include Plaintiff's Complaint ("Compl.") (Dkt. 2);
Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 8); Brief in Support of Plaintiff's
Motion for Default Judgment ("Mem. Supp.") (Dkt. 9); Declaration of Kenneth Anderson Jr.
("Anderson Decl.") (Dkt. 9-1); Declaration of Diana M. Bardes ("Bardes Decl.") (Dkt. 9-2); and
all attachments and exhibits submitted with those filings.
[2] Plaintiff alleges Advanced Thermal Solutions, Inc. ("ATS") is jointly and severally liable for
violations alleged in this suit, but is "no longer an active corporation and therefore, is not a named
defendant to this action."  (Compl. ¶ 7.)

Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1332(g)(2) and 1145, and also pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185.  (Compl. ¶ 1; Mot. Default J. ¶ 1.)  The Fund seeks to collect a monetary judgment consisting of delinquent contributions, accrued interest, liquidated damages, and attorneys' fees and costs pursuant to ERISA, a collective bargaining agreement ("CBA") between Advanced Thermal Solutions, Inc. ("ATS") and the International Association of Sheet Metal, Air, Rail, and Transportation Workers, formerly known as the Sheet Metal Workers' International Association, Local Union No. 103 ("Local 103"), and the Trust Document governing the Fund.  (Compl. ¶ 1; Mem. Supp. at 1.)

Defendant has failed to appear in this matter or otherwise respond to Plaintiff's Complaint. (Mot. Default J. ¶ 3.)  After the Clerk entered default against Defendant on June 27, 2022 (Dkt. 7), Plaintiff filed the instant motion, accompanying memorandum, declarations, and supporting documentation (Dkts. 8–9).  When Defendant failed to appear at the hearing before the Court on July 29, 2022 (Dkt. 13), the Court took this matter under advisement to issue this Report and Recommendation.

### B.    Jurisdiction and Venue

Before the Court can enter default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue.

*First*, the undersigned finds that this Court has proper subject-matter jurisdiction.  A federal district court has subject-matter jurisdiction over ERISA actions pursuant to the jurisdictional provisions in 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).  Further, a federal district court has original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In this case, Plaintiff asserted claims pursuant to ERISA and

LMRA, federal statutes.  (Compl. ¶ 1.)   This Court accordingly has subject-matter jurisdiction over the claims in this action.

*Second*, this Court has personal jurisdiction over Defendant.  Due to ERISA's nationwide service of process provision, personal jurisdiction is proper if a defendant has sufficient national contacts with the United States and it comports with the Fifth Amendment.  *See* 29 U.S.C. 1132(e)(2); *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443–44 (4th Cir. 2015) (citation omitted) ("Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment."); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. May 15, 1997).  Here, as discussed more below, Plaintiff served Defendant pursuant to Federal Rule of Civil Procedure 4 and ERISA's nationwide service of process provision.  (*See* Dkt. 5.)  Further, Defendant is incorporated in Wyoming and its principal place of business is in Mills, Wyoming.  (Compl. ¶ 8.)  Therefore, Defendant has sufficient national contacts with the United States, and this Court has personal jurisdiction.

*Lastly*, the undersigned finds that venue is proper in this Court.  For ERISA actions, venue is proper in the federal judicial district where the plan is administered.  29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered.").  Here, venue is proper because the Funds are administered within the Eastern District of Virginia.  (Compl. ¶ 3; Anderson Decl. ¶ 3.)  Moreover, venue is proper in a federal judicial district in which a substantial part of the events or omissions giving rise to the action occurred.  28 U.S.C. § 1391(b)(2).  Here, venue is also proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred in

3

this district.  (*See* Compl. ¶ 3.)

**C.    Service of Process**

Lastly, before the Court can render default judgment, it must be satisfied that the defaulting parties have been properly served.  Here, on May 17, 2022, Plaintiff's process server served Defendant J&J Advanced Thermal Solutions, Inc. by providing the summons, Complaint, and related materials to John Conway, the individual designated to receive service on behalf of the organization.  (*See* Mem. Supp. at 7; Dkt. 5.)  The undersigned finds that Plaintiff's service comports with Federal Rule of Civil Procedure 4(c) and (h)(1)(B) and therefore the Defendant was properly served.

## II. Findings of Fact and Proposed Findings of Law

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. Mar. 26, 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (internal quotation marks and citations omitted)).  Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted.  *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. Feb. 5, 2003) (citations omitted).

Based on the Complaint, Plaintiff's Motion for Default Judgment and supporting Memorandum, the Declaration of Kenneth Anderson Jr., the Declaration of Diana M. Bardes, and the supporting documents submitted with these filings, the undersigned makes the following

findings of fact and proposed findings of law.

A.    **The Parties**

Plaintiff is an employee pension benefit plan within the meaning of sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees.  (Compl. ¶ 5, Anderson Decl. ¶ 3.)  The Fund is a jointly administered trust fund pursuant to section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). (Compl. ¶ 5.)  The Trustees of the Fund are duly authorized and administer the Fund for the benefit of the participants and beneficiaries of the Fund.  *Id.*  The Fund is administered out of an office located in Falls Church, Virginia.   (Compl. ¶ 3; Anderson Decl. ¶ 3.)   Plaintiff's trustees collectively brought this lawsuit in the name of the its trust or plan on behalf of their participants and beneficiaries pursuant to Federal Rule of Civil Procedure 17.  (Compl. ¶ 6.)

Defendant J&J ATS is a company incorporated in Wyoming with its principal place of business in Mills, Wyoming.  (Compl. ¶ 8.)  Defendant is an employer within the meaning of 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5) and has engaged in an industry affecting commerce within the meaning of ERISA, 29 U.S.C. §§ 1002(11) and (12).  *Id.*

B.    **Joint and Several Liability**

Defendant J&J ATS is not a signatory to the CBA giving rise to this litigation.  Plaintiff asserts, however, that Defendant is an alter ego or successor of ATS, which is a signatory, and thus Defendant is liable for ATS's obligations to the Fund.  (*See* Compl. ¶¶ 20–23; Anderson Decl. ¶¶ 5–8.)

To determine whether a company is an alter ego or successor under Fourth Circuit law, the Court must determine (1) whether "substantially the same entity controls both the old and new

employer"; and, if yes, (2) "whether the transfer resulted in an expected or reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations."  *Alkire v. NLRB*, 716 F.3d 1014, 1020 (4th Cir. 1983); *see also, NLRB v. Kodiak Elec. Co., Inc.*, 70 Fed. Appx. 664, 667 (4th Cir. 2003); *Bd. of Trs., Nat'l Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Gillis Sheet Metal, Inc.*, No. 1:10cv33 (TSE/TRJ), 2010 WL 4025033, at *2 (E.D. Va. Sept. 21, 2010).  "Legal formalities" such as "separate incorporation and distinct equity ownership" may not be relied upon to avoid alter ego status and "conceal [the companies'] inextricable relationship."  *Kodiak*, 70 Fed. Appx. At 667.

The undersigned finds that Defendant J&J ATS is an alter ego and successor of ATS under this test.  First, the companies are controlled by "substantially the same entity."  The same individuals—John Conway, Justin Theien, Rebecca Conway, and Tiffany Theien—are the owners and officers of both ATS and Defendant J&J ATS.  (Compl. ¶ 21(a); Anderson Decl. ¶ 6(a), Exh. 2.).  The companies use the same website.  (Compl. ¶ 21(c); Anderson Decl. ¶ 6(c).)  The companies employ the same or similar classification of employees, with the same or similar training.  (Compl. ¶ 21(e); Anderson Decl. ¶ 6(e).)  And the companies perform the same type of work, in the same industry, in the same geographic market.  *Id.*  Defendant has continued the operations of ATS since ATS was administratively dissolved in October 2010 for failure to pay taxes. (Compl. ¶ 21(b); Anderson Decl. ¶ 6(b).)  The Court therefore finds that ATS and Defendant J&J ATS are controlled by substantially the same entity.

Second, it was expected or reasonably foreseeable that the transfer from ATS to Defendant would financially benefit ATS by eliminating its labor obligations, including payment of pension benefits, while Defendant continued to operate the same business free from the financial requirements of the CBA.  (Compl. ¶ 22; Anderson Decl. ¶ 7.)  *See, e.g.*, *Bd. of Trs., Nat'l*

6

*Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Gillis Sheet Metal, Inc.*, No. 1:10-cv-00943 (LO/IDD), 2011 WL 1558701, at *5 (E.D. Va. Mar. 21, 2011) (finding a "disguised continuance" because the old company's "avoidance would constitute a benefit … by allowing it to circumvent its labor obligations under ERISA").  Here again, Defendant is performing the same work in the same industry with the same employees as ATS but is not paying the benefits, including pension benefits, the CBA requires of ATS.  *Id.*

Therefore, the undersigned finds that Defendant J&J ATS is an alter ego and successor of ATS.  As an alter ego and successor, Defendant J&J ATS is also an employer within the meaning of 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5) and is bound by the CBA.  (*See* Compl. ¶ 23; Anderson Decl. ¶ 8.)  Accordingly, the undersigned finds that Defendant should be held jointly and severally liable for ATS's obligations to the Fund.

### D.      Defendant's Obligations

#### 1.      *Defendant's Payment Obligations*

At the relevant times, ATS, and therefore its alter ego and successor Defendant J&J ATS, employed employees represented by Local Union 103.  (Compl. ¶ 9.)  ATS signed and entered into a CBA with Local 103, which represented ATS's employees for purposes of collective bargaining.  (Compl. ¶ 10.)  Local 103 is a labor organization representing employees in an industry affecting interstate commerce.  (Compl. ¶ 9.)  Pursuant to the CBA, ATS was obligated to submit monthly remittance reports and fringe benefit contributions to the Fund for all hours worked or paid on behalf of covered employees within Local 103's jurisdiction.  (Compl. ¶ 10; Decl. Anderson ¶ 9.)  Moreover, ATS was obligated to abide by the terms and conditions of the Trust Agreement establishing the Fund, as well as any policies or procedures adopted by the Board of Trustees. (Compl. ¶ 11; Anderson Decl. ¶ 10, Exh. 4.)

Here, ATS, and therefore its alter ego and successor Defendant J&J ATS, was obligated to pay an Exit Contribution to the Fund pursuant to the Trust Document.  When ATS ceased performing work for which contributions to the Fund were required and therefore ceased to have an obligation to contribute to the Fund, the Fund assessed ATS's withdrawal liability and determined such liability was *de minimis*.  (Compl. ¶ 19; Anderson Decl. ¶ 19.)  Thus, ATS was not required to pay withdrawal liability.  *Id.*  Under the Trust Document, a participating employer is liable for an Exit Contribution if the employer "(i) ceased to have an obligation to contribute to the Fund, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute, but was not required to pay withdrawal liability under Title IV of ERISA." (Compl. ¶ 12; Anderson Decl. Exh. 4, at Art. V, Sec. 6(a).)  Furthermore, the amount of the Exit Contribution will be equal to the amount of the employer's contributions due for the 36-month period preceding the month in which the Employer ceased to have an obligation to contribute.  (Compl. ¶ 15; Anderson Decl. Exh. 4, at Art. V, Sec. 6(e).)  Failure to pay the Exit Contribution constitutes a delinquency and is treated the same as any other delinquent contribution to the Fund.  (Compl. ¶ 17; Anderson Decl. Exh. 4, at Art. V, Sec. 6(g).)

Specifically, under ERISA, the CBA, and Trust Document, damages imposed on an employer who fails to make required contributions include:

(1)    The delinquent contribution;

(2)    Interest on the delinquent contribution at the rate of 0.0233% per day, compounded daily, starting on the date of the first late payment until the date of payment;

(3)    Liquidated damages in the amount equal to the greater of interest on the delinquent contribution, or 20% of the delinquent contribution pursuant to the Trust Document;

(4)    Liquidated damages equal to the greater of $50 or 10% of the contributions due for each month of contributions that a participating employer fails to pay within 30 days after the due date, but pays before any lawsuit is filed; and

(5)    Attorneys fees and costs incurred by the Fund in pursuing the delinquent amounts, including this action.

(Compl. ¶¶ 17–18; Anderson Decl. ¶¶ 16–17, Exh. 4 at Art. V, Sec. 2(c), 6(g).)

### 2.   *Defendant's Unpaid Contributions*

The undersigned finds that ATS failed to comply with the obligations discussed above, namely, to submit the required Exit Contribution to the Fund under the terms of the CBA and Trust Document. (Compl. ¶¶ 26–34; Anderson Decl. ¶¶ 18–21.)  ATS ceased performing work covered by the CBA as of January 31, 2016.  (Compl. ¶ 19; Anderson Decl. ¶ 18.)  The Fund confirmed with the Local 103 that ATS had withdrawn from the union and had not had any Local 103 members perform work since January 2016.  (Anderson Decl. ¶ 18.)  By ceasing operations, ATS effected an "event of withdrawal" under Title IV of ERISA, and because the Fund determined any withdrawal liability to be *de minimis*, ATS was not required to pay withdrawal liability.  (Compl. ¶ 19; Anderson Decl. ¶ 19.)  Therefore, ATS was required to pay an Exit Contribution pursuant to the Trust Document.  (Compl. ¶ 19; Anderson Decl. ¶ 20, Exh. 4 at Art. V, Sec. 6(a).)

The Fund sent a letter providing notice of the owed Exit Contribution to ATS on November 7, 2017.  (Anderson Decl. ¶ 20, Exh. 6.)  The assessed Exit Contribution was equal to ATS's contributions due for the 36-month period preceding January 31, 2016, in the amount of $4,010.23.  *Id.*  The Fund demanded payment by December 20, 2017.  *Id.*  The Fund sent another demand letter to ATS on February 21, 2018.  (Anderson Decl. ¶ 20, Exh. 7.)  Upon discovery of ATS's alter ego/success entity, Defendant J&J ATS, the Fund send another demand letter to both ATS and Defendant on November 3, 2021.  (Anderson Decl. ¶ 20, Exh. 8.)

ATS and Defendant J&J ATS failed to make a payment by December 20, 2017.  To-date, neither ATS nor Defendant has made any payment.  (Compl. ¶ 31; Anderson Decl. ¶ 21.)

Because Defendant failed to pay and is in default, Plaintiff is entitled to repayment of the delinquent contribution, interest, and liquidated damages pursuant to the Trust Document.

Accordingly, Plaintiff alleges that they are entitled to:

(1)  $4,010.23 in delinquent Exit Contribution pursuant to the Trust Document;
(2)  $1,903.29 in interest calculated at the rate of 0.0233% per day, compounded daily, on the delinquent contributions (through July 15, 2022) pursuant to the Trust Document; and
(3)  $1,903.29 in liquidated damages equal to the interest calculated pursuant to the terms of the Trust Document.

(Compl. ¶¶ 30–32; Anderson Decl. ¶¶ 20, 23, 24.)  These amounts total $7,816.81.  (Mem. Supp. at 15.)

### F.  Attorneys' Fees and Costs

Lastly, Plaintiff seeks attorneys' fees and costs in the total amount of $4,496.98 pursuant to ERISA, 29 U.S.C. § 1132, and the Trust Document.  (Compl. at 10; Mem. Supp. at 15; Bardes Decl. ¶ 4; *see* 29 U.S.C. § 1132(g)(2) ("[T]he court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant.").)  Plaintiff seeks this amount based on (1) $3,931.50 in attorneys' fees and (2) $565.48 in costs.  (Bardes Decl. ¶¶ 5–6.)

First, Plaintiff seeks $3,931.50 in attorneys' fees based on 20.6 hours of billable work. (Bardes Dec. ¶ 5.)  In this matter, a partner billed at a rate of $275.00 per hour and a paralegal billed at a rate of $150.000 per hour.  *Id.*  Counsel spent time researching legal theories, drafting and filing the complaint, arranging for service of process, drafting and filing the clerk's entry of default, and drafting the instant motion and supporting documents.  *Id.*  In support of this request, Plaintiff's counsel submitted an itemized chart outlining the legal services performed, the attorney who performed the services, and the time spent on each item.  (Bardes Decl. Exh. 1.)  Upon review of the submitted billing entries, the undersigned finds that the number of hours counsel expended on the matter is reasonable.  Further, the undersigned finds that the hourly rates are consistent with reasonable rates charged in the Eastern District of Virginia for like matters.  (Bardes Decl. ¶¶ 8–10, Exhs. 2–4.)

Second, Plaintiff seeks $565.48 in costs, which include (1) $163.48 in process-server fees and (2) $402.00 in filing fees.  (Bardes Decl. ¶ 6.)  Upon review of counsel's submissions, the undersigned finds it appropriate to award Plaintiff's requested attorneys' fees and costs.

### IV.  REQUESTED RELIEF

As outlined above, Plaintiff requests that the Court (1) enter default judgment against Defendant, (2) enter judgment against Defendant in the amount of $7,816.81, consisting of:

- $4,010.23 in unpaid Exit Contribution;
- $1,903.29 in interest calculated at the rate of 0.0233% per day, compounded daily from the date the payment was due (through July 15, 2022); and
- $1,903.29 in liquidated damages on the unpaid contribution;

and (3) grant Plaintiff $4,496.98 in attorneys' fees and costs.  (Mem. Supp. 15.)

### V.  RECOMMENDATION

Upon review of the entire record in this matter, the undersigned recommends that the Court enter an order (1) granting Plaintiff's Motion for Default Judgment against Defendant J&J ATS; (2) entering judgment against Defendant in the amount of $7,816.81, consisting of Defendant's unpaid Exit Contribution, accrued interest, and liquidated damages; and (3) entering judgment against Defendant for $4,496.98, consisting of Plaintiff's attorneys' fees and costs incurred in pursuing this matter.

VI. <u>Notice</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

August 1, 2022
Alexandria, Virginia